All right, thank you all. We're going to go to case number two. 22-1353, 22-1439 Cherannzetta Stagger v. Experian Information Solutions, Inc. Mr. Cheney. Hello. Good morning. Good morning. Anytime you're ready, we are. Thank you, and I welcome you to the court. May it please the court. My name is David Chammy and I represent the appellant Cherannzetta Stagger in this appeal. I don't want to bore the court with a recitation of the information contained in our principle and reply briefs. No, we've read every last word. And I know you have. We can actually begin asking you questions. Now, the district court said it did not need to wait for the close of discovery because Ms. Stagger does not contend that she expects to receive or discover evidence of an injury or that she has any plans, as I recall, to rely on future discovery to prove damages. Was the court correct that she didn't indicate a need for additional discovery on the standing issue at the time of the motion? And exactly, if she was, what information was she awaiting in those final weeks of any discovery that would have changed the calculus? Thank you, Your Honor. Absolutely, the court is incorrect. There was an outstanding subpoena already that had been sent out to Capital One and other creditors. Capital One was specifically identified in the complaint as a creditor with whom our client had established a new credit relationship with. We alleged in the complaint that Capital One had approved Ms. Stagger for credit at less favorable terms. We submitted a subpoena to Capital One. We were seeking documents and a deposition in order to confirm what we believe, which is that the debt-to-income ratio that was being transmitted to Capital One would have impacted the amount of credit that was available to Ms. Stagger following her bankruptcy. So it is a claim that was alleged in the complaint. It was an allegation that was from the very and had already begun pursuing that in discovery. The court appeared to rely almost exclusively on two credit reports that Experian generated during the course of litigation. It's mind-blowing because there are dozens of different credit scoring models and variations of scoring models that are used by creditors, and we also were prevented from deposing Experian's corporate representative who we had scheduled, and because we were waiting on a ruling to this ancillary issue regarding the production of hundreds of pages of documents before we conducted that deposition, we weren't given the opportunity to examine Experian on this issue that the credit score had actually seen a nominal positive impact by the correction or a negative impact by the correction, but it's an insignificant credit score change. Courts, judges like all of us don't have specialized knowledge in how credit scoring works. The algorithms are proprietary, but Experian knows, and had we been given the opportunity to depose Experian, and I have in the past on this issue, they have no idea exactly how these algorithms work, and they don't even know if the scores that they provided to the court or to Ms. Stagger in this particular model are utilized by any creditors, so the fact that the court relied on this unreliable information to dismiss our client's case on the basis of standing was wholly improper. She alleged on information and believed that she was charged a higher interest rate on a Capital One credit card because of the misinformation. Has she ever been able to verify with the creditor whether that was true? Does she have any evidence that she lost out on offers she might have received as a result of either the soft or the hard inference? Your Honor, there were subpoenas out to all of those creditors. We had our legs taken out from under us by the dismissal before completion of discovery on those issues, and that's precisely the point. And of course, defendants waited until the 10th hour before they filed a motion to dismiss on this issue, but knowing all along that the allegations, the facial allegations that were made in the complaint would have defeated any motion to dismiss in the early goings, and so what they did was, in order to head off the magistrate judge's ruling on their bad faith with respect to their discovery issue, they, out of desperation, brought a motion to dismiss at that point in time in order to try to, and I think successfully, they got the case dismissed without it giving us the opportunity to complete discovery, which we believe would have ultimately resulted in evidence that supported damages. Mr. Chairman, one question. I just want to make sure I understand the timing here. So Ms. Steger filed for bankruptcy on June 3rd, 2020. Is that correct? That sounds correct, Your Honor. And when was the, at least there seems to be some information in the record that would indicate that whatever inquiry Credit One Bank made with regard to that credit application that perhaps that inquiry took place prior to the time the bankruptcy was filed. Are we talking about the same Credit One Bank account? Capital One, Your Honor, and the Capital One Bank account was opened in April of, or February of 2021. So we don't, we, that information, there's no dispute that the false information, the reputational harm that would come along with claiming that a debt was owed that wasn't owed, that a monthly payment obligation existed that didn't exist, that that information was transmitted to Capital One. And the reasonable inference would be that Capital One would take that information into consideration. The fact that she was approved for credit is, it establishes that the bankruptcy is not as harmful as defendant or as the appellee would have the court believe. There are creditors who look at the filing of a bankruptcy as a positive thing, that a person has now rid themselves of this debt that they couldn't pay and has gotten a fresh start. Well, what defendant or appellee's reporting is, is false information that essentially undercuts the benefit of that bankruptcy. It continues to report an outstanding balance and to their point in their brief, they argue, but it said as of 2019, that's even more troublesome. The creditor in this case hadn't reported information to Experian in two years, yet they continue to report this balance and monthly payment obligation. So getting... I'm sorry, I'm just trying to focus on your argument with regard to Capital One. So Experian argues in its brief that if Capital One had indeed given Ms. Stagger less favorable rates because of her credit report, that it would have been legally obligated to send Ms. Stagger some sort of documentation to that effect. Your Honor, every time a consumer applies for credit, creditors look at their credit reports and make decisions about how much credit to extend, what interest rates they're going to give you. These are not adverse actions as the FCRA would require an adverse action letter if you deny credit. When they're determining your credit worthiness, they will submit to you that you've been approved and here's your credit limit. We've done this many times, that credit limits are determined based on your risk scores, that they determine based on looking at your credit report. And one of the things we allege in the complaint is that Experian advertises on their website is that creditors take into consideration debt to income ratio. And that doesn't affect your credit score at all. How much money do you make? Well, that's not information Experian has, but they advertise that creditors should look to see how much debt you have. So basically prior, other than issuing the subpoena, Ms. Stagger herself had no information as to why she got the interest rate that she did with regard to the Capital One account? Well, it's not just the interest rate, it's also the credit limit. And the credit limit was $500, and that's indicated on the credit report at docket 28, page 11. She was given a docket 28, based on her coming out of bankruptcy, it was her expectation that she would get a higher credit limit. And I guess my question is, did she have any sort of communication or indication from Capital One as to why she got the spending limit and the interest rate that she did? She did not, Your Honor, which is why we pursued the subpoena, which is why we were seeking that information from Capital One. And that's what discovery is for. And it's to give us that opportunity to ascertain. And we know, a reasonable inference is that if they were reporting a balance that Ms. Stagger, which, by the way, is her monthly income is approximately the same as the debt that was being reported about her. So it's a reasonable inference that if you're reporting that this consumer, who's a grandmother, a senior who makes $2,500 a month, has an outstanding $2,500 balance and monthly payment obligations, that that's going to have a direct credit you're willing to extend. Let me ask you quickly, why do you think Ms. Stagger alleged enough in the way of emotional damages? Your Honor, I believe that both Spokio and Ramirez, as well as this Court's authority on whether or not the type of harm here is concrete, intangible harms are something this Court should be taking into consideration if the injury itself is similar to one that you would find at common law. And this is reputational harm. And despite Appelli's efforts to couch this as a positive thing, if I were to tell the Court that you, any one of the members of this panel, owed money to me, and I was reporting that information to third parties, and that information was false, nobody would say that that's not reputational harm. It's absolutely false that Ms. Stagger had a balance owed to op loans. And to report that to a third party is akin to reputational harm or defamation, as the Supreme Court has recognized. And that's enough to confer standing. And she does say that this affected her, the alleged stress and anxiety. And she says it affected her. It's not for the Court to determine, especially on standing, whether or not to believe her. That is a jury question. And we have to... Did she need to allege something more, like seeing mental health professionals, or that she's medicating as a result of this? Absolutely not, Your Honor. I mean, the idea that garden variety emotional distress does not exist, that every time somebody feels stressed, that they have to run to a drug store to buy aspirin or Tylenol or Excedrin to deal with their headaches, or to deal with the stress, the natural feeling of anxiety that someone would feel when they look at their credit report, and they see that after going through a bankruptcy, where you expected to receive a fresh start, that that information is still being reported incorrectly. It's, in my view, common sense that any one of us would feel that stress and anxiety, that weight. And to require that plaintiffs now, in order to pursue these harms, that we all can acknowledge credit has a disparate impact on our ability to function in our country, we need credit. To argue that we need to now force consumers to run to doctors, or to testify that they're so distraught that they can't function in life, is ridiculous. The consumer is going to care about their credit, is going to have stress and anxiety over it. And what we should be focusing on is, why did Experian report this stale account for two years, when they have every piece of evidence and all of the resources to get it right? And we're ignoring the real root problem, which is, why are we here? It's not because Ms. Stagger had stress. We're here because Experian is reporting inaccurate information on millions of people's credit reports. Thank you. Thank you. All right. Mr. Hall. Hello, Mr. Hall. Hello, Your Honors. Thank you, and may it please the Court. I'm happy to start off with questions, if Your Honors would prefer, but I certainly have a presentation. You know, the whole point of bankruptcy is to give debtors a clean start. Experian's invoked common sense in its brief, so let me ask you some common sense questions. Of course. How could it possibly help a debtor to emerge from bankruptcy with a significant debt still on credit report? I would imagine a creditor would see that evidence as evidence that she hasn't changed her habits, continues to overextend herself. Sure. And I, sorry, didn't mean to cut you off. Please continue, Your Honor. I mean, is she correct that Experian's own website lists total debt reported as a material factor in determining creditworthiness? Because her credit report appears to list the amount of debt as accounting for about 30 percent of her credit score. The reference to the debt-to-income calculation, which is a calculation a lender performs under some circumstances and not in every application, which is obviously hypothetical here, right? Can look at your total debt, but it looks at your total current monthly obligation. That calculation, if Your Honors have ever applied for a mortgage loan, you list your total monthly obligations. It can include things that are not on your credit report like alimony. It doesn't look at total outstanding balances, and then compares it to your income information, as Mr. Chami noted, Experian doesn't have. We're not certainly arguing in this case that a balance on a report after bankruptcy could never cause harm. Our argument is much simpler than that. It's that it didn't cause plaintiff any harm because nobody calculated her debt-to-income ratio. I did want to address the Capital One subpoena issue that Mr. Chami started off with. They actually did respond to that subpoena, at least as far as documents. I think a deposition was outstanding, and there was no evidence that they looked at this account or that it had any impact on their determination at all. I think that the fact that this case had been pending for nearly a year, including the time they had for their pre-suit investigation, and the fact that 1681M of the Fair Credit Reporting Act requires lenders like Capital One, if they take any adverse action, to provide a specific notice. There's a statutory requirement there, and now she has an ongoing commercial relationship with Capital One that she couldn't find out if this one account impacted their evaluation of her at all. To me, it defies common sense and why an extra few weeks in discovery was going to somehow magically appear some additional evidence of harm when we've been in this case for a year. You know, it appears that there was at least one harm and several soft inquiries on her credit report during the time that this mistaken information appeared on her report. So, why is publication of negative information about her indebtedness not enough to meet the threshold for standing? How could she ever know if she was denied opportunities for credit from the soft inquiries, for example? Well, the soft inquiries, when they're related to credit opportunities, and this is far from the facts of this case, require firm offers of credit. So, you receive usually the pre-approved offers we receive in the mail. So, in order for there to be a soft inquiry there, and they saw your full report, there would be an offer they received. The Crabtree case at the Seventh Circuit dealt with that, Your Honor. The issue here, more to the point, is that this information isn't negative. It is at best neutral. What this says is that as of May 2019, the last time this was reported or updated, she had borrowed money and was paying it on time. That was the purpose of the credit score here. It wasn't that it demonstrated she had no harm. It's that it illustrated this is positive reporting. But isn't that exactly what she was trying to figure out by asking for a deposition of Capital One, whether or not the facts would support her claim that the reporting did adversely, in fact, hurt the terms by which she was given credit by Capital One? I think that is part of why she served that subpoena. But I think the fact that she chose to wait until the close of discovery to pursue it. We have their documents. They didn't support her claim. That's why she didn't attach them in response to the motion to dismiss. So, why did... I'm just curious. So, the district court here, after it received the motion, decided that discovery was no longer necessary? On her standing issue, right. She had ample opportunity to show the concrete injury. Most of this information is information that's uniquely within her purview. The statute gives her a right to get it, and she could have gotten it long ago. If she thought she was harmed by this credit card that was approved, or received some unfavorable rates, she had ample time to ask about it before going to federal court, or certainly in the 11 months of discovery that had preceded the motion to dismiss. And the issue here really is that there isn't any demonstrable injury, right. There isn't any denial. There isn't any proof of an adverse impact of this reporting. It strains common sense to think that somebody who goes through bankruptcy and tells the world, I am no longer able to pay my debts. The federal laws allow me to take opportunity of this. But prior to that, I was a good credit risk. I paid my debts on time. I point out that the cases that plaintiff points to, and I think they're fair, where you hear information, causes harm, are cases like the Ewing case, where it falsely portrays somebody as a deadbeat that doesn't pay their debts. This is the exact opposite reporting. This is saying, it says right on the report, open never late. That is the reporting all of us want in our reports. It's the thing that helps us. And she's saying here, she's the opposite. She is the one that was hurt by that. Now there might be cases where that happens, but there's no evidence in the Mr. Hall. She urged the court not to rule on the standing issue on a factual basis while discovery was still open. Why not wait? What was it? Three weeks, four weeks? Where was the rush to judgment here? I don't see it as a rush here at all, Your Honor. I think that the case had been pending and she'd been given ample opportunity to explore this. I think if this was the injury that caused her to invoke the federal courts, she had, I think Judge Tharp was given more than enough time to do that. I don't think it was a rush. I don't think that- You've given, look, I was a district court judge, Judge Lee was a district court judge. I just don't understand saying, well, we gave you a year for discovery, but you know what? We're just going to end it at 11 months. I don't get it. It's a problem for me. I appreciate that, Your Honor. I don't understand the representation that, it's a somewhat one-sided representation from Experian that you want us to take that this was actually a good, a net positive for her report when we don't have input from anyone else on that, and she's saying the opposite. The statute wasn't written to say you've got to get rid of everything after a discharge on these reports, except for something that shows they were paying their account on time. The statute doesn't say that. It says the discharge needs to be accurately reported. That's one of the pieces of information. That's correct. The statute does specifically allow the reporting of the bankruptcy information itself and negative accounts up to seven to 10 years, depending on the facts. This just wasn't, the issue here is much more akin to somebody giving you a compliment that turns out wrong. If somebody came in here and said I was tall, that would probably be, in most views, wrong. It's not harmful in and of itself, and common law long distinguished between statements that we could assume were harmful, calling somebody a deadbeat, potential terrorist. Those are things that common law assumed were harmful. Saying something that turned out wrong about somebody, or incomplete, which I think a better characterization of this reporting, because this exact same information is information plaintiff put on her bankruptcy petition. It's not wrong. It's not false. It's incomplete, because it doesn't reflect the discharge, but that sort of statement, that sort of incorrect statement, by itself, it's never per se actionable. You're talking about a technical violation without a concrete harm. It's right infant spoke. I guess I understand from interdeposition that Ms. Steger didn't really, couldn't identify any particular transaction or financial harm that the fellow that she was aware of, but I think that, and I know that it's her burden to establish standing. That's all a given, but I guess I come back to what Judge Rovner's question is. I just don't know why it is that the district court stopped discovery in its tracks, particularly if what the plaintiff was trying to do is obtain discovery to substantiate the allegations of harm that she put in her complaint. Now, I do note that in the case below, before the district court, they did not note the Capital One subpoena specifically as one of the reasons why discovery should continue. They looked at the 30B6 deposition of Experian for that, and so perhaps that might have had some influence in the matter, but was the district court's determination or decision to stop discovery, was that something that came up sua sponte, or was that something that Experian requested? How did that come about? I think it was sua sponte. We certainly didn't request a stay of discovery or a stay of any pending depositions. We filed a motion when it became clear that a case that should have been reasonably resolved long ago wasn't going away, and information that we believe the record only showed was positive, or at worst neutral, as to Ms. Stagger. And when we had deposed her, this wasn't a case where she had the sort of emotional distress that meets the circuit standards. This wasn't a case where she had any credit denials or any real-world impacts. At deposition, asked how this affected her, she said, somewhat. There was nothing else to the record here, and certainly faced with a discovery order that your honors all appreciate we think was incorrect, we thought the best get rid of the case because there's no standing here. There isn't a harm. There just isn't one, and I think the court also thought this wasn't a close question. You say something positive about somebody, even if it's wrong, it's not defamation. I'm happy to rest on our briefs on the cross appeal unless your honors have any specific questions. I know I'm out of time. Okay. Thank you. Thanks so very much, Mr. Holt. Okay. Mr. Chamey has two minutes. Thank you, your honor. I won't use the full two minutes. I think it's... Mr. Chamey, can I ask you, before the district court... Before the district court, when you asked the district court to continue discovery, the only reason you gave district court for that is the upcoming deposition of experience representative and that you wanted to explore experience use of the debt to income or credit utilization records. You did not mention the Capital One subpoena at all. Why shouldn't we consider that waiver of the grounds, the argument that you're making now on appeal before us, that the Capital One subpoena is sufficient to send the case back to district court? Your honor, I believe we gave an example of the type of discovery that was still outstanding. I don't believe we attempted or indicated that that was the world of discovery that was outstanding. In fact, there was a pending objection to a discovery ruling and order by the magistrate judge that was also pending. We didn't reference that either, but we were expecting hundreds of documents that we believe would have established willfulness on the part of Experian and their credit reporting. And if we found willfulness, we would need actual damages. But those were documents from Experian, right? So you're talking about... So in the brief, you talk about a deposition of experience representative. In the attached declaration, you talk about documents you would get from Experian. Right now, you talk about documents from Experian. I just don't see Capital One appear at all here before the district court to support plaintiff's request that discovery be allowed to continue. And I understand, and we did not raise it in the brief, but your honor, I also did not expect the district court at the 11th hour to dismiss discovery. And I believe that the attachment of documents outside the pleadings that were created during litigation by Experian were improper. I thought the court should have given us an opportunity to complete discovery and whatever other discovery that we had that was pending and open. I mean, as Mr. Hall acknowledges, there was a pending subpoena and the issue was we couldn't proceed with discovery. So while Mr. Hall suggests there was only weeks left or maybe four weeks left in discovery, the reality is we had stopped because we're waiting on a ruling because we couldn't proceed with discovery. So we expected the court to extend and provide additional time. I don't believe that the court is limited by the fact that we didn't raise the Capital One to the district court in considering whether or not the court should have granted a motion to dismiss based on standing with the record before it. It baffled my firm and myself specifically that with about a month left in discovery that the court would dismiss on standing when the court would have been afforded the opportunity to consider that. With other evidence, we have expert witnesses that would have also addressed damages besides Capital One. We had Capital One documents that our expert would have considered as well. I mean, there's a lot of other information that could have been ascertained in the limited time that we had left with the expectation that we would have had more time, of course, because, again, discovery had been stalled because of this outstanding issue with the documents. Unless there's any other questions. I see none. Thank you very much, Mr. Tamey. Thank you very much, Mr. Hall. Case will be taken under advisement.